IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ANGELA D. BEACHUM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:04CV368-SRW |
| | ) | (WO) |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

Plaintiff Angela D. Beachum brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits under the Social Security Act.  The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c).  Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

## BACKGROUND

On June 28, 2001, plaintiff filed an application for disability insurance benefits.  On January 15, 2003, after the claim was denied at the initial administrative levels, an ALJ conducted an administrative hearing.  The ALJ rendered a decision on April 14, 2003, in which he found, *inter alia*, that: (1) plaintiff has severe impairments of "left shoulder pain, weakness and limited range of motion with mild adhesive capsulitis, status post surgeries for decompression of acrominal spur and manipulation of adhesion, chronic low back pain

secondary to lumbar strain, hypertension, tension headaches, GERD [gastroesophageal reflux disease], obesity and history of uterine fibroids;" (2) plaintiff retains the residual functional capacity for light work with additional non-exertional limitations; (3) plaintiff is unable to do her past relevant work due to the combination of her exertional and non-exertional limitations; and (4) plaintiff retains the capacity for work that exists in significant numbers in the national economy and was not under a disability as defined in the Social Security Act at any time through the date of the decision.  On February 20, 2004, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The court does not reweigh the evidence or substitute its judgment for that of the Commissioner.  Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings.  Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Cornelius, 936 F.2d at 1145.  Factual findings that are supported by substantial evidence must be upheld by the court.  The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  Davis, 985 F.2d 531.  If the court finds an error in the ALJ's application of the law, or if the ALJ fails

2

to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed.  Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

The plaintiff challenges the Commissioner's decision, arguing that: (1) the ALJ erred by failing to order a consultative examination because the record contained evidence of depression; (2) the ALJ erred by failing to consider plaintiff's treatment in regard to her ability to work on a regular and continuing basis; and (3) the ALJ failed to pose a complete hypothetical question to the vocational expert.

### Failure to Order Consultative Examination

Plaintiff argues that the ALJ erred by failing to order a consultative examination by a psychiatrist or psychologist.  The ALJ is charged with developing a fair and full record. Todd v. Heckler, 736 F.2d 641, 642 (11th Cir.1984).  However, the burden is on the *plaintiff* to prove she is disabled. The Social Security regulations provide in part:

> In general, you have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means you must furnish medical and other evidence that we can use to reach conclusions about your impairment(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis.

20 C.F.R. § 404.1512(a).

Consultative examinations are not required by statute; however, the Commissioner's regulations provide for them where warranted. See 20 C.F.R. § 404.1517.  Those regulations state:

> (a)(1) *General.* The decision to purchase a consultative examination for you

3

will be made after we have given full consideration to whether the additional information needed (e.g., clinical findings, laboratory tests, diagnoses, and prognosis) is readily available from the records of your medical sources.

(b) *Situations requiring a consultative examination.* A consultative examination may be purchased when the evidence as a whole, both medical and non-medical, is not sufficient to support a decision on your claim.

20 C.F.R. § 404.1519(a).

While it is reversible error for an ALJ not to order a consultative examination when the evaluation is necessary for him to make an informed decision, <u>Reeves v. Heckler</u>, 734 F.2d 519, 522 n. 1 (11th Cir.1984), the ALJ is not required to order a consultative examination unless the record, medical and non-medical, establishes that such an examination is necessary to enable the ALJ to render a decision. <u>Holladay v. Bowen</u>, 848 F.2d 1206, 1210 (11th Cir.1988)(citing <u>Ford v. Secretary of Health and Human Services</u>, 659 F.2d 66, 69 (5th Cir.1981)) (emphasis added).

In support of her contention that a consultative psychological evaluation was required in this case, plaintiff relies on limited evidence in the medical record.  First, plaintiff represents that Dr. Hart "documented in a physical dated June 15, 2001, that Mrs. Beachum has suffered from 'depression since injury to her shoulder in December of 1999.' (R. 217)." (Plaintiff's brief, p. 8; <u>see also</u> Plaintiff's reply brief, p. 9).  However, this is an overstatement of the medical record.  Dr. Hart merely records that plaintiff complained of depression.  <u>See</u> R. 217 ("She also complains of fatigue, depression since injury to her shoulder in December of 1999.").

Plaintiff further argues:

> The ALJ goes into great detail about a physical completed on December 31, 2002, by Dr. Tucker (R. 24).  Yet, the ALJ failed to mention during the physical, Dr. Tucker ordered a psychological test called Portable Tactual Performance Test (TPT) which evaluates "speed of movement, tactile perception, and problem-solving ability" (R. 377).  MORTON, DAVID A III M.D., MEDICAL ISSUES IN SOCIAL SECURITY DISABILITY, APPENDIX 11 (2003).  The results of this test were not included in the record.  However, reference to this objective psychological test, in addition to suggestions of a mental impairment from Mrs. Beachum's treating physicians, should have triggered the ALJ's statutory duty to obtain a consultative psychological examination.

(Plaintiff's brief, pp. 8-9).  Again, this is an inaccurate representation of the record.  Dr. Tucker ordered thyroid function tests (TFTs), the results of which *are* included in the record and on which Dr. Tucker annotated "OK."  (R. 377, 380).

Plaintiff accurately notes that Dr. Jensen, a treating physician, included an assessment of "possible stress depression" when he examined plaintiff on August 24, 2000. (R. 201). On that date, Dr. Jensen noted that plaintiff had "several complaints":

> One is light headiness [sic] and dizziness for the past two days.  Occasionally feels nauseated.  Not aware of anything that aggravates or alleviates it.  Can happen at any time.  Not necessarily worse with getting up, turning, twisting or moving around.  Wonders if it might be stress.  Does have a little sinus pain and pressure behind the right eye.  Usually her periods are heavy.  She has to change pads every 1/2 hour but the last one only lasted for three days, started four days ago.  Is hypertensive.  On Tiazac and Maxzide.  Wonders if medications may be decreasing her libido.

(R. 201).  Dr. Jensen's assessment was:

> Anemia, Iron deficiency.  Add low Fe per recent studies.  Heavy periods.  Large uterus on exam, probably fibroids.  We will get pelvic ultrasound to confirm.  Patient admits she did not start her Iron because it upsets her stomach.  She said she will try however to see if this may help her overall sense of well being.  Chromagen Fa, one q day; Z-pack for possible sinusitis.

> Possible stress depression.  Serzone 50 mg. bid; 100 mg bid; and 150 mg bid;
> and 200 mg. bid per starter kit.  Plendil 5 mg., one daily to replace Tiazad.
> Continue Maxide.  Recheck in two to three weeks, PRN.  Will check her
> blood pressure at home and come in sooner if problems with it[.]

(Id.).[1]  Dr. Jensen's treatment notes for his next evaluation of plaintiff, on October 2, 2000,

make no reference to depression.  He notes that plaintiff "[h]as no complaints or problems

now.  Feels OK at this time.  Is taking her iron and is able to tolerate it."  (R. 200).

Finally, plaintiff argues that she complained of symptoms such as weight gain and

fatigue which *could* result from depression and that this evidence should have put the ALJ

on notice of a the need for a consultative psychological examination. (Plaintiff's brief, p. 9,

citing R. 109, 377, 378, 217).

In Beachum's application for benefits – filed ten months after the cited evaluation by

Dr. Jensen and two weeks after plaintiff complained of depression to Dr. Hart – she did not

allege disability on the basis of depression or any other mental impairments.  Instead, she

claimed disability on the basis of: (1) pain and inflammation of her left shoulder due to the

injury she incurred at work; and (2) hypertension.  (R. 60, 62).  Additionally, in her hearing

testimony before the ALJ, plaintiff made no allegation of depression or other mental

impairment.  (R. 398-422).  Plaintiff was represented by counsel at the hearing.  Id. Under

these circumstances, and in view of the sparse evidence of any mental impairment, the ALJ

did not err in failing to order a consultative examination.  See Street v. Barnhart, 133 Fed.

Appx. 621 (11th Cir. May 18, 2005)(unpublished opinion).

---

[1] According to the Physician's Desk Reference, none of the listed medications are indicated for the treatment of depression.  See *Physician's Desk Reference for Prescription Drugs* (2006).

<u>Need for Frequent Medical Appointments and Hypothetical to VE</u>

Plaintiff raises two additional issues that are interrelated. She contends that the ALJ erred by failing to consider her need for frequent medical appointments in assessing her residual functional capacity and that he erred by failing to include her need for frequent medical appointments in his hypothetical question to the vocational expert.

In determining a claimant's residual functional capacity, the ALJ is required to consider all of the relevant evidence of record, such as "[t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (*e.g.*, frequency of treatment, duration, disruption to routine, side effects of medication) . . . ." SSR 96-8p.[2] A

---

[2] In her brief, plaintiff's counsel writes:

SSR 96-8p states:

**Most competent vocational experts will testify that competitive employment will not accommodate a claimant's need to be absent more than one or two days per month.** Lesser absences may be equally incompatible with competitive employment and must be addressed on a case-by-case basis. If the record establishes the medical necessity for treatment which, because of its frequency, duration, disruption of routine, or side effects, significantly interferes with a claimant's ability to work a normal 8-hour day, and the 12-month disability duration requirement is satisfied then SSR 96-8p may require a finding of disability based on a single factor – the effects of treatment, including limitations or restrictions imposed by the mechanics of treatment – because it precludes the claimant from working on a "regular and continuing basis."

SSR 96-8p *emphasis added.*

(Plaintiff's brief, Doc. # 11, p. 5). However, this "quoted" language does not appear in SSR 96-8p. Additionally, plaintiff's counsel quotes <u>Kelley v. Apfel</u>, 185 F.3d 1211 (11th Cir. 1999) for the propositions that "'only an ability to do full-time work will permit the ALJ to render a decision of not disabled'" and that "a claimant 'could pass Step Five and be entitled to benefits even though capable of working on a part-time basis.'" (Doc. # 11, p. 5). The language quoted by plaintiff's counsel does appear in the opinion; however, it was not an observation or holding by the Eleventh

7

Circuit.  Rather, the court was restating the government's interpretation of SSR 96-8p in the motion before the court.  Whether or not the quoted language is an accurate statement of the law, the Eleventh Circuit expressly declined in <u>Kelley</u> to reach the issue regarding part-time work.  185 F.3d at 1215.

In this portion of her brief – as in the section addressing the need for a consultative examination – plaintiff's argument regarding the evidence of record is misleading.  Plaintiff argues, "In the case at bar, the ALJ failed to consider the effects [of] Mrs. Beachum's numerous doctor's appointments and hospital visits which prevent her from being able to work on a regular and continuing basis.  While the ALJ stated that Dr. Simpson, a treating physician, reported that Mrs. Beachum could engage in full time employment, Dr. Simpson's statement was based on a "**fully invalid**" Functional Capacity Evaluation (FCE) performed on December 12, 2000." (Doc. # 11, p. 5)(emphasis in plaintiff's brief).  This is technically accurate.  However, as the Commissioner argues, the FCE was determined by plaintiff's treating physical therapist and physician to be "fully invalid" because the therapist determined that "tests indicate submaximal effort" and that plaintiff had engaged in "symptom magnification."  (R. 159).  The therapist stated:

> Very high pain reports throughout testing did not match facial expressions, movement patterns, velocity of movement, etc. . . In addition, self-limited behavior was present throughout OCCASIONAL MATERIAL HANDLING tests.

*   *   *   *   *

TEST VALIDITY
Validity criteria are based on the test results and cross correlation to the test data to determine if the results are valid and represent maximal effort by the patient.  These criteria account for pain response as pain feedback creates a pattern of endpoints with organic problems.  The patient failed 45% of these criteria resulting in a rating of FULLY INVALID.  This indicates submaximal effort with a majority of the testing.  The FCE Summary Sheet, from actual test data, therefore, cannot be interpreted as representative of the patient's maximal safe capability.  This requires an estimation or repeated testing with passed validity criteria.

INAPPROPRIATE ILLNESS BEHAVIOR
This behavior is observable and measurable behavior which is out o[f] proportion to the impairment and is measured by non-organic signs, inappropriate symptoms, high pain drawing scores, and movement patterns which improve by distraction.  The patient failed nearly all of these criteria and received a FULLY INVALID rating in this classification.

SYMPTOM EXAGGERATION
This is a subjective determination by the evaluator of whether the patient's pain profile is out of proportion to the observed movement patterns throughout the

frequent need for medical treatment may, in some cases, result in absenteeism that precludes full-time employment and supports a finding of disability. However, plaintiff is not entitled to a finding of disability unless her impairment prevents substantial gainful activity for a continuous period of 12 months. See Barnhart v. Walton, 535 U.S. 212, 217 (2002)(upholding Commissioner's interpretation of regulation "to mean that the claimant is not disabled if 'within 12 months after the onset of an impairment . . . the impairment no longer prevents substantial gainful activity.'")(quoting 65 Fed. Reg. 42774 (2000)).

At the administrative hearing, plaintiff's counsel provided the ALJ with a "treatment calendar" purportedly showing the dates on which plaintiff received medical treatment during the period from 1999 through 2002. (R. 351-54, 398). Even assuming that this calendar does not exaggerate plaintiff's history of medical treatment, it permits a conclusion by the ALJ

---

evaluation. The patient's pain profiles were in the HIGH range and did not correlate well with the observed movement patterns indicating signs of symptom magnification.

(R. 159-60). In his decision, the ALJ noted that the FCE, in which Dr. Simpson concurred, revealed that plaintiff had an "estimated capability to do light exertional work," and that it was an estimate because plaintiff failed the validity criteria. (R. 25).

In discussing plaintiff's duty excuses, plaintiff's counsel states, "Mrs. Beachum's work restrictions were modified several times before Dr. Sherrer placed her on medical leave from February 10, 2000 until an unknown date of recovery (R. 116)." (Doc. # 11, p. 2). The "evidence" cited by plaintiff's counsel at page 116 of the record is counsel's letter to the ALJ, in which she makes this same representation. However, the actual medical excuse signed by Dr. Sherrer on February 10, 2000 states "Return to work 2-11-00." (R. 300). Plaintiff further argues that, "[o]n 1-29-00 Mrs. Beachum was told 'no work until cleared by Dr. Sherrer' (R. 147)." (Plaintiff's reply brief, Doc. # 16, p. 6). Again, this quote is technically accurate. However, the complete language of the work restriction imposed at the conclusion of plaintiff's ER visit on Saturday, January 29, 2000, is: "no work till cleared by Dr Sherrer *on Monday*." (R. 147)(emphasis added). In reaching its decision in this case, the court has relied on the law and the record as it actually exists and not as represented by plaintiff's counsel.

that plaintiff's need for frequent absences[3] to obtain medical treatment was confined to a period of several months immediately following her injury in December 1999 and that it did not extend for any period of twelve consecutive months.  (See R. 351-54).  Thus, the ALJ did not err by failing to include this limitation in his assessment of plaintiff's residual functional capacity or in his hypothetical to the vocational expert.  Barnett v. Apfel, 231 F.3d 687, 690 (10th Cir. 2000)(finding hypothetical to VE sufficient where "[a]lthough it did not contain impairments like plaintiff's nosebleeds or respiratory infections, there is no evidence these conditions were expected to last twelve months, and thus there was no error in failing to present such conditions to the vocational expert"); see also Jens v. Barnhart, 347 F.3d 209 (7th Cir. 2003)("As this court has noted, the ALJ must question the vocational expert regarding every impairment set forth in the claimant's record to the extent that the impairment is supported by the medical evidence.  Jens's claim of continuing absenteeism was not an impairment supported by the medical evidence.  Dr. Leer, Jens's physician, opined that Jens's impairments would not preclude him from working a forty hour

---

[3] As noted previously, plaintiff "quotes" SSR 96-8p as stating that "competitive employment will not accommodate a claimant's need to be absent more than one or two days per month," (Doc. # 11, p. 5 and p. 7).  This language does not appear in the ruling.  In any event, the evidence of record does not support the conclusion that each listed medical appointment required or would require plaintiff to miss a full day of work.  Cf. Barnett v. Apfel, 231 F.3d 687, 691 (10th Cir. 2000)("Finally, the ALJ did not err by failing to consider plaintiff's absenteeism.  No such evidence was presented at the hearing, and plaintiff's current extrapolation of how many days she must have missed from work based on her medical record is faulty both in that it is not limited to time missed due to her back impairment, neuropathy, and heart condition, and in that it assumes she was required to miss entire days of work for each appointment.").

week.")(citation omitted).[4]

## CONCLUSION

The specific arguments presented by plaintiff are without merit.  Additionally, upon review of the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and a proper application of the law.  Thus, the decision is due to be affirmed.  A separate judgment will be entered.

Done, this 30th day of May, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE

---

[4] In the present case, Dr. Simpson, plaintiff's treating physician,  released plaintiff for full-time light duty well before 12 months from her alleged onset date.  See R. 179 (August 30, 2000 work release with limitation of "no use of left arm"); R. 163 (physical therapy progress report dated September 19, 2000)("Work Status: Continues to work full-time, light duty – phone, office type duties); see also R. 299 (November 2000 work excuse for "full time light duty, phone, office type duties").